UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
NEUROLOGICAL SURGERY PRACTICE   :
OF LONG ISLAND, PLLC,               :   **MEMORANDUM DECISION AND**
                                          :   **ORDER**
               Plaintiff,   :
                                          :   23-cv-02977 (BMC)
      - against -           :
                                          :
                                          :
UNITED STATES DEPARTMENT OF   :
HEALTH AND HUMAN SERVICES, *et al.*,   :
                                          :
             Defendants.   :
                                          :
-------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff Neurological Surgery Practice of Long Island, PLLC brings this action against the United States Department of Health and Human Services, Department of the Treasury, Department of Labor, and high-level officials of those agencies. It alleges that defendants have failed to lawfully implement the No Surprises Act, Public Law No. 116-260 ("NSA"), in violation of the Administrative Procedure Act, 5 U.S.C. § 706, *et seq.*, and the Fifth Amendment.

Presently before the Court are defendants' motion to dismiss and plaintiff's motion for a preliminary injunction. It is clear that the statutory scheme, as implemented, does not live up to plaintiff's expectations. However, it is not the province of this Court to order a reworking of a legislative and executive program. See Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) ("SUWA") (rejecting attempts at "wholesale improvement of [a] program by court decree, rather than in the offices of the Department[s] or the halls of Congress, where programmatic improvements are normally made"). Plaintiff is essentially asking this Court to rewrite the statute to make it do what plaintiff believes Congress intended it to do. Because the

Court cannot do that, defendants' motion to dismiss is granted and plaintiff's motion for a preliminary injunction is denied as moot.

## BACKGROUND

Plaintiff is a private neurosurgery practice that provides out-of-network medical services to enrollees of major health plans. Since January 2022, plaintiff's provision of these services has been governed by the NSA.[1]

The NSA prohibits out-of-network health care providers from billing health plan members directly for certain items or services. See 42 U.S.C. §§ 300gg-131(a) (emergency services); 300gg-132 (non-emergency services). A provider must instead seek compensation from the patient's health care plan. Under the act, upon receiving a request for payment from a provider, the patient's health care plan determines whether and in what amount it will pay for the services. If the provider and health care plan cannot agree on an amount, the act provides for an independent dispute resolution ("IDR") process in which a private arbitrator ("IDR entity") selects between amounts submitted by the provider and the health plan.

The NSA provides deadlines for various steps in the process. A health care plan's initial payment decision must be made within 30 calendar days after the out-of-network provider transmits its bill to the health plan. Id. at § 300gg-111(a)(1)(C)(iv)(I). If there is a dispute between the health plan and the provider regarding the proper reimbursement amount, there is a 30-day open negotiation period. Id. at § 300gg-111(c)(1)(A). If negotiations are unsuccessful, and there is no specified state law that applies to resolve the parties' dispute, a party wishing to

---

[1] Congress passed the NSA in December 2020 and the act took effect on January 1, 2022. The federal IDR scheme was then put on hold for several months as a result of litigation challenging the department's IDR methodology. See e.g., Texas Med. Ass'n v. United States Dep't of Health and Human Servs., No. 6:22-cv-372, 2023 WL 1781801 (E.D. Tex. Feb. 6, 2023). The IDR process began again in February 2023.

bring an IDR proceeding must do so within 4 days.  Id. at § 300gg-111(c)(1)(B).  The IDR entity

must render a decision within 30 days, which is binding on the parties "in the absence of a

fraudulent claim or evidence of misrepresentation of facts presented" and is subject to limited

judicial review under the Federal Arbitration Act.  Id. at § 300gg-111(c)(5)(A) and (E).  A health

care plan must pay any additional reimbursement ordered by the arbitrator to the provider within

30 days of the decision.  Id. § at 300gg-111(c)(6).

In what should surprise absolutely no one under this complex and short time periods

scheme, a backlog of disputes awaiting resolution has accumulated in the year-and-a-half since

the NSA has been implemented.  Plaintiff alleges that these delays are the result of defendants'

failure to lawfully implement the act, and that it has suffered substantial harm in the form of

unpaid or delayed reimbursement from health care plans.  Plaintiff also contends that defendants

have improperly allowed certain claims to be rejected by arbitrators as ineligible for federal IDR,

and that the agencies have failed to allow reasonable "batching" of similar claims in a single IDR

proceeding.

Plaintiff seeks a preliminary injunction compelling defendants to take the following

actions:

- Direct health plans subject to the No Surprises Act to either make an initial
  payment to the provider or issue of notice of denial of payment within 30 calendar
  days after the out-of-network provider transmits its bill to the health plan, and
  enforce compliance with this direction;

- Direct health plans subject to the No Surprises Act to make all initial payments
  under the No Surprises Act to the out-of-network providers who rendered the
  medical services, as opposed to the patients, and monitor compliance with this
  direction;

- Direct health plans subject to the No Surprises Act to ensure that (i) the
  explanation of benefits (EOB) forms required by the No Surprises Act be sent to

the out-of-network providers who rendered the medical services; (ii) these EOBs clearly indicate the issuing health plan's understanding whether the case is eligible for independent dispute resolution (IDR) under either federal or state law; and (iii) the EOBs report the health plans' proposed qualified payment amount (as defined according to the No Surprises Act) for each CPT code reflected on the EOB, and monitor compliance with these directions;

- Devote sufficient monetary and other resources required to ensure that the IDR process time frames established by the No Surprises Act are complied with;

- Direct health plans to take all steps necessary to ensure that the IDR process time frames established by the No Surprises Act are complied with, and monitor compliance with these directions;

- Establish a streamlined process for determining threshold eligibility issues, along with providing an explanation for why a dispute is eligible or ineligible for IDR so as to eliminate roadblocks in the IDR processing system;

- Allow a reasonable batching of similarly situated IDR claims;

- Follow the provisions of the No Surprises Act and require that reimbursement disputes relating to elective procedures performed in a New York state-located hospital, by an out-of-network provider, on a fully insured or otherwise state regulated health plan beneficiary, who was aware before he or she came to the hospital that the provider was out of network, but chose to proceed anyway, be accepted by and decided through federal IDR process;

- Direct health plans to pay additional reimbursement due providers, as determined through the IDR process, within 30 days, as required by the No Surprises Act, and monitor compliance with this direction; and

- Require the Departments to provide a status report to the Court weekly regarding compliance with this Order.

Defendants have moved to dismiss the complaint for lack of standing and failure to state a claim.

## DISCUSSION

I.      <u>Standing</u>

A plaintiff has standing only if it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  The party

asserting jurisdiction must show "standing for each claim and form of relief sought."  Baur v.

Veneman, 352 F.3d 625, 641 n.15 (2d Cir. 2003).  "[A] district court must take all

uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of

the party asserting jurisdiction."  Id.  The court must also "accept as valid the merits of

[plaintiff's] legal claims."  FEC v. Ted Cruz for Senate, 142 S. Ct. 1638, 1647 (2022); see also

Cohen v. Cannavo, No. 11-cv-5482, 2012 WL 3999846, at *6 (S.D.N.Y. Sept. 12, 2012) (the

Supreme Court "has made clear that when considering whether a plaintiff has Article III

standing, a federal court must assume *arguendo* the merits of his or her legal claim.").

Given the varying forms of relief sought, it is necessary to distinguish between them for

purposes of deciding standing.  See Baur, 352 F.3d at 642 ("[A] plaintiff who is injured by one

administrative deficiency does not necessarily obtain standing to challenge all similar

deficiencies." (citing Lewis v. United States, 518 U.S. 322 (1996))).  In some of its requests,

plaintiff seeks to compel defendants to enforce various requirements of the act against IDR

entities and health care plans.  Specifically, plaintiff requests injunctive relief requiring

defendants to monitor and enforce health care plans' compliance with the 30-day initial payment

deadline, the 30-day reimbursement deadline following an arbitrator's decision, and the

requirement that health care plans make payments to providers and not patients.

To the extent plaintiff seeks to compel enforcement of the statutory deadlines or other

requirements of the act, it lacks standing to do so.  Plaintiff has shown an actual, concrete injury

in the form of delayed or unpaid payments.  See Stephens v. U.S. Airways Grp., Inc., 644 F.3d

437, 442 (D.C. Cir. 2011) (Kavanaugh, J., concurring) ("Money later is not the same as money

now.").  But, as the Supreme Court recently reaffirmed, a plaintiff "lacks a judicially cognizable

interest in the prosecution or nonprosecution of another," and therefore "lacks standing to contest

the policies of the prosecuting authority when he himself is neither prosecuted nor threatened

with prosecution.'" United States v. Texas, No. 22-58, 599 U.S. __, 2023 WL 4139000, at *7

(June 23, 2023); see also In re Attorney Disciplinary Appeal, 650 F.3d 202, 203-04 (2d Cir.

2011).  Injuries stemming from a lack of prosecution or enforcement are simply "not the kind

redressable by a federal court." Texas, 2023 WL 4139000, at *5.  Because plaintiff is not itself

threatened with prosecution or enforcement, it lacks standing to challenge defendants' exercise

of discretion in enforcing the requirements of the act against IDR entities or health care plans.

The Supreme Court has recognized a limited exception to this general rule.  As set forth

in Heckler v. Chaney, 470 U.S. 821, 833 n.4 (1985), the Court has noted that "a plaintiff

arguably could obtain review of agency non-enforcement if an agency 'has consciously and

expressly adopted a general policy that is so extreme as to amount to an abdication of its

statutory responsibilities.'" Texas, 2023 WL 4139000, at *7.

Plaintiff argues that its claims fall within that exception.  It contends that it is not

challenging "Defendants' decision about which health plans and IDR entities warranted

enforcement actions and which did not", but their "complete[] fail[ure] to do anything to enforce

the statutory deadlines and other requirements that the Defendants themselves, the health plans,

and the IDR entities were obligated to follow."  Plaintiff cites statistics showing that over 95% of

pending IDR proceedings have been outstanding more than five months.  In addition, of those

claims that are adjudicated in favor of a provider, 87% are not paid by the statutory deadline.

Only 14% of providers' complaints have been acknowledged by defendants, with only 7% being

decided against health plans.  Defendants have also conceded that they have certified only 26%

of the IDR entities needed based on estimated volume, and that actual volume is 15.2 times what they anticipated.

Although plaintiff has made more than a plausible showing of rampant inefficiencies in the federal IDR system, that is not enough to invoke Chaney.  Plaintiff must point to an *express* policy of nonenforcement, and it has not done so.  See Salmon Spawning and Recovery All. v. U.S. Customs & Border Prot., 550 F.3d 1121, 1129 n.5 (Fed. Cir. 2008) (refusing to apply Chaney's exception because "plaintiffs ha[d] not alleged that there was any express policy of non-enforcement"); People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric., 7 F. Supp. 3d 1, 12-13 (D.D.C. 2013) (refusing to apply Chaney's exception absent "some kind of official, concrete statement of the agency's general enforcement policy").

However, in other requests for relief, plaintiff seeks to compel defendants to comply with their own obligations under the act.  Plaintiff claims that defendants themselves have failed to follow the deadlines established by the act.[2]  It also seeks an injunctive order requiring defendants to direct health plans to send EOB forms to providers (not just plan beneficiaries) and include certain information regarding eligibility and payment amount on that form.  It also wants defendants to "[e]stablish a streamlined process for determining threshold eligibility issues" and provide an "explanation for why a dispute is eligible or ineligible for IDR."  Plaintiff also demands that defendants allow "reasonable batching of similarly situated IDR claims" into a single IDR processing.  Lastly, plaintiff argues that defendants have improperly allowed arbitrators to reject certain claims as ineligible for federal IDR based on an erroneous conclusion

---

[2] Although plaintiff's complaint is not entirely clear, it seems to contend that defendants have failed to enforce the statutory deadlines against health plans and IDR entities *and* that defendants have themselves failed to comply with these statutory deadlines.

that New York law serves as a "specified state law" that precludes federal IDR review for those claims.

Plaintiff has standing to bring these claims insofar as they relate to defendants' alleged failure to abide by their own statutory obligations under the act, not defendants' enforcement of the act against third parties. Again, for purposes of standing, I must assume *arguendo* that defendants are legally required to do what plaintiff says they are required to do. When I do that, it follows that plaintiff has shown that its injuries are fairly traceable to defendants' failure to take these actions. The alleged "causal nexus" is clear. See DiPizio v. Empire State Dev. Corp., 745 F. App'x 385, 388 (2d Cir. 2018). The act requires plaintiff to work through the federal IDR system to receive payment for out-of-network services. Defendants failed to abide by certain obligations under the act, which resulted in a backlog of disputes, severe delays, and rejection of claims that should be eligible for IDR. This has caused plaintiff harm in the form of unpaid or delayed reimbursement for medical services, and deprived plaintiff of the opportunity to contest health care plans' initial offers of payment.

Defendants contend that plaintiff has been harmed not by any conduct on the part of the agencies, but by the failure of IDR entities and health care plans to comply with statutory directives. But indirect injury is not fatal to standing so long as a plaintiff demonstrates a causal nexus between the alleged injuries and the defendants' conduct – and plaintiff has made that showing here. See Rothstein v. UBS AG, 708 F.3d 82, 91 (2d Cir. 2013) ("Indirectness is not necessarily fatal to standing because the 'fairly traceable' standard is lower than that of proximate cause.").

For similar reasons, plaintiff's harm could likely be redressed by a favorable judicial decision. A plaintiff "need not show that a favorable decision will relieve his every injury."

Larson v. Valente, 456 U.S. 228, 244 n.15 (1982).  "All that is required is a showing that such

relief be reasonably designed to improve the opportunities of a plaintiff not otherwise disabled to

avoid the specific injury alleged."  Huntington Branch, NAACP v. Town of Huntington, 689

F.2d 391, 394 (2d Cir. 1982).  I am confident that if the Court were to order the departments to

take the actions requested by plaintiff, at least some of plaintiff's harms could be remedied.

## II.     **Plaintiff Fails to State an APA Claim**

Under APA § 706(1), a court may "compel agency action unlawfully withheld or

unreasonably delayed," but it may only do so if the plaintiff identifies a "*discrete* agency action

that [the agency] is *required to take*."  SUWA, 542 U.S. at 64 (emphasis in original).  In other

words, "§ 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-

discretionary act,' or 'to take action upon a matter, without directing how it shall act.'"

Benzman v. Whitman, 523 F.3d 119, 130 (2d Cir. 2008).  This "limitation [generally] precludes .

. . broad programmatic attack[s]," and "rules out judicial direction of even discrete agency action

that is not demanded by law."  SUWA, 542 U.S. at 65 (citing Lujan v. National Wildlife

Federation, 497 U.S. 871 (1990)).

Plaintiff first claims that defendants have failed to comply with the various deadlines set

forth in the NSA.  In support of this allegation, plaintiff points to 42 U.S.C. § 300gg-

111(c)(2)(A), which provides:

> Not later than 1 year after December 27, 2020, the [HHS] Secretary, jointly with
> the Secretary of Labor and the Secretary of the Treasury, shall establish by
> regulation one independent dispute resolution process[,] . . . under which, . . . a
> certified IDR entity . . . determines, . . . the amount of payment under the plan or
> coverage for such item or service furnished by such provider or facility.

Plaintiff argues that defendants have so utterly failed to implement a workable IDR system that they have failed to comply with the act's requirement that they "shall establish" an IDR process.

But this section's broad mandate that the departments "shall establish" an IDR process is not specific enough to support plaintiff's claim under APA § 706(1).[3]  "[W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be."  SUWA, 542 U.S. at 65.  Defendants have undisputedly established an IDR process – it's just not one that plaintiff thinks (seemingly for good reason) is effective.  But this is not enough to support a claim under § 706(1).

The various statutory provisions related to deadlines do not direct defendants to take any discrete action either.  These provisions are directed to the regulated entities – providers, health care plans, and IDR entities – not the government agencies charged with administering the act.

- "[For emergency services] t*he group health plan or health insurance issuer . . .* not later than 30 calendar days after the bill for such services is transmitted by such provider or facility, sends to the provider or facility, as applicable, an initial payment or notice of denial of payment."  42 U.S.C. § 300gg-111(a)(1)(C)(iv).

- "[For non-emergency services] *the plan or coverage . . .* not later than 30 calendar days after the bill for such services is transmitted by such provider, shall send to the provider an initial payment or notice of denial of payment."  Id. at § 300gg-111(b)(1)(C).

- "With respect to [a covered] item or service, . . . *the provider or facility . . . or plan or coverage may*, during the 30-day period beginning on the day the

---

[3] Plaintiff also alleges that defendants have violated other provisions of the APA by acting arbitrarily, capriciously, in abuse of discretion, or otherwise not in accordance with law (§ 706(2)(A)); acting contrary to constitutional right, power, privilege, or immunity (§ 706(2)(B)); acting contrary to constitutional right, power, privilege, or immunity (§ 706(2)(B)); acting in excess of statutory jurisdiction, or limitations (§ 706(2)(C)); and acting without observance of procedure required by law (§ 706(2)(D)).  These boilerplate assertions appear to be nothing more than an exercise in unnecessary exhaustion.  Plaintiff's claims focus on agency action unlawfully withheld or unreasonably delayed under § 706(1), and plaintiff does not explain how defendants have violated any of these other provisions.  To the extent plaintiff challenges defendants' conduct as unconstitutional under § 706(2)(B), its constitutional claims are assessed – and rejected – below.

provider or facility receives an initial payment or a notice of denial of payment from the plan or coverage regarding a claim for payment for such item or service, initiate open negotiations under this paragraph between such provider or facility and plan or coverage for purposes of determining . . . an amount agreed on by such provider or facility, respectively, and such plan or coverage for payment (including any cost-sharing) for such item or service. . . . [T]he open negotiation period, with respect to an item or service, is the 30-day period beginning on the date of initiation of the negotiations with respect to such item or service." Id. at §300gg-111(c)(1)(A).

- "In the case of open negotiations . . . that do not result in a determination of an amount of payment for such item or service by the last day of the open negotiation period . . ., *the provider or facility . . . or group health plan . . .* that was party to such negotiations may, during the 4-day period beginning on the day after such open negotiation period, initiate the independent dispute resolution process." Id. at §§ 300gg-111(c)(1)(B).

- "Not later than 30 days after the date of selection of the certified IDR entity with respect to a determination for a qualified IDR item or service, *the certified IDR entity shall* . . . select one of the offers." Id. at § 300gg-111(c)(5)(A).

- "The total plan or coverage payment required . . . with respect to a qualified IDR item or service for which a determination is made . . . or with respect to an item or service for which a payment amount is determined under open negotiations . . ., *shall be made directly to the nonparticipating provider or facility* not later than 30 days after the date on which such determination is made." Id. at § 300gg-111(c)(6).

(Emphasis added).

Plaintiff's allegation that defendants have devoted insufficient monetary resources to the IDR system is also not sufficient to state a claim under the APA. See Lincoln v. Vigil, 508 U.S. 182, 192 (1993) (an agency's allocation of appropriated funds is typically committed to agency discretion by law because "the very point . . . is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way"). And while the act requires defendants to issue an "interim report" on the status of the IDR scheme by January 1, 2024, and a "final report" two years later,

defendants have not violated that statutory obligation, which has not even come due. See 42

U.S.C. § 300gg-111(C)(5)(E)(iv).

Plaintiff also argues that defendants should be required to direct health plans to send EOB

forms to providers, not just plan beneficiaries. It claims that defendants have failed to require

health plans to clearly state their understanding of whether a case is IDR eligible and an exact

value of their Qualified Payment Amount ("QPA")[4] in the EOB. Plaintiff says that allowing

health care plans to omit this information has caused delays in adjudication and, in plaintiff's

view, created a system in which IDR entities do not have a clear understanding of what health

care plans consider to be arbitrable claims.

But again, plaintiff fails to point to any statutory provision that requires defendants to

take these steps. The act directs health care plans to send an "advanced" EOB form to plan

beneficiaries, not IDR entities. See 42 U.S.C. § 300gg-111(f)(1). Although the act lists several

requirements for information that health plans must include on the EOB form, it does not require

a party to state an exact QPA or whether the claim is eligible for IDR. See id. at § 300gg-

111(f)(1)(A)-(H).

Plaintiff next argues that defendants should be ordered to "[e]stablish a streamlined

process for determining threshold eligibility issues" and provide an "explanation for why a

dispute is eligible or ineligible for IDR." It also argues that defendants have failed to certify

enough IDR entities to handle the volume of disputes. Plaintiff points to language in the NSA

that requires defendants to "ensure" that a certified IDR entity "has (directly or through contracts

or other arrangements) sufficient medical, legal, and other expertise and sufficient staffing,"

---

[4] The QPA is essentially the median rate that the health plan would have paid for in-coverage services in that geographic area.

"carries out the responsibilities of such an entity," and "does not under the IDR process carry out any determination [with respect to a dispute not] eligible for selection." Id. at § 300gg-111(c)(4).

Once again, plaintiff fails to identify an unambiguous statutory requirement that the defendants have skirted. The statute does not mandate any discrete actions to "ensure" compliance with these requirements, and plaintiff does not point to any provision requiring defendants to certify a certain number of IDR entities.

Plaintiff also alleges that defendants have demonstrated an "unwillingness to allow reasonable batching of similar claims" in a single IDR proceeding. Although the statute sets minimum requirements for batching and authorizes the HHS Secretary to "specify criteria" on top of those minimum requirements, id. at § 300gg-111(c)(3)(A); see also 45 C.F.R. § 149.510(c)(3)(i)(C), plaintiff does not allege that defendants have prevented batching in circumstances where batching is unambiguously required under the act.

Certain states have their own IDR processes for "surprise" billing. The NSA includes an exception that makes claims ineligible for federal IDR when a state has a specified state law that meets certain criteria regarding the provision of an alternative IDR process. 42 U.S.C. §§ 300gg-111(a)(3)(H)(i), 300gg-111(a)(3)(I). As relevant here, New York law provides that a claim is ineligible for New York IDR if it concerns an elective procedure performed in a hospital by an out-of-network provider on a New York-regulated health plan beneficiary who was aware before arriving in the hospital that the provider was out-of-network but chose to proceed anyway. See N.Y. Fin. Serv. L. §§ 601-08.

Plaintiff argues that defendants have unlawfully allowed federal IDR entities to reject these claims as ineligible for federal IDR based on an erroneous conclusion that the New York law serves as a "specified state law" that precludes federal IDR review – leaving plaintiff

13

without a forum to arbitrate these claims.  This claim fails because plaintiff has not pointed to any provision of the act that requires defendants to compel arbitration of these claims.  In any event, it is the IDR entities, not defendants, who are charged with making eligibility determinations under the act.  See 45 C.F.R. § 149.510(c) ("[T]he certified IDR entity selected must review the information submitted in the notice of IDR initiation to determine whether the Federal IDR process applies.").

### III.    Plaintiff Fails to State a Constitutional Claim

"To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process. . . . In order to do this, a plaintiff must [] identify a property right, [] show that the [government] has deprived him of that right, and [] show that the deprivation was effected without due process." J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013) (internal quotation marks omitted).

Plaintiff claims that defendants' untimely, ineffective, and inefficient administration of the federal IDR process has deprived them of the "right to be compensated for the medically necessary services that [it] provide patients" "at least at the level of the cost for providing those services."

Plaintiff's due process claim fails because it has failed to identify a federally protected property right.  See Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir. 1994) ("The deprivation of a procedural right . . . is not actionable when there is no protected right at stake."). Plaintiff cites a handful of New York state cases in support of its position that it has a right to be compensated at cost by private entities (i.e., health care plans) for services it provides to private persons (i.e., patients).  But none of these cases establish such a right under state law – let alone a constitutionally protected right.  See Huntington Hosp. v Abrandt, 4 Misc.3d 1, 779 N.Y.S.2d

14

891 (App. Term 2004) (defendant failed to raise a triable issue of fact as to how much she owed

plaintiff-hospital by pointing to the hospital's agreements with third-party insurers); Nassau

Anesthesia Assocs. P.C. v Chin, 32 Misc. 3d 282, 924 N.Y.S.2d 252 (Nassau Cnty. Ct. 2011)

(when a contract fails to state a specific price for medical services, the "reasonable value" of the

services should reflect what the physician would actually receive from third-party payors, not

just the published rate); Goldman v Ambro, 134 Misc.2d 655, 512 N.Y.S.2d 636 (Nassau Cnty.

Ct. 1987) (plaintiff may not renege on an implied agreement to pay fair and reasonable value for

medical services by applying for Medicaid after seeking treatment).

Even assuming that plaintiff had some right to be compensated at cost, plaintiff has not

shown any deprivation of that right at the hands of the government.  To the extent that health

care plans have lowballed medical providers with below-cost offers or failed to pay providers on

time, those are decisions made by the plans – not the government.  The same is true for

plaintiff's complaint that IDR entities have ruled in favor of health plans more than medical

practices.  Health plans and IDR entities have independent decision-making authority under the

act, and "[n]othing in the language of the Due Process Clause itself requires the State to protect

the life, liberty, and property of its citizens against invasion by private actors."[5]  See DeShaney

v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989).  Plaintiff remains free to

bring suit against these third parties to vindicate whatever property rights it may have in

receiving payment for its services – and indeed has filed such suits against health plans.  See e.g.,

---

[5] The "fairly traceable" standard for standing is a much lower bar than the requirement to plausibly plead government deprivation of a federally protected right for purposes of stating a due process or takings claim.  See generally Rothstein v. UBS AG, 708 F.3d 82, 91 (2d Cir. 2013) ("[T]he 'fairly traceable' standard is lower than that of proximate cause.").

15

Neurological Surgery Practice of Long Island, PLLC v. Empire Blue Cross Blue Shield, No. 23-cv-3050 (E.D.N.Y.).

Plaintiff's Takings Clause claim fails for similar reasons. See Concrete Pipe & Prods. of Calif. Inc. v. Constr. Laborers Pension Tr. for S. Calif., 508 U.S. 602, 641 (1993) ("Given that [plaintiff's] due process arguments are unavailing, it would be surprising indeed to discover [that] the challenged statute nonetheless violated the Takings Clause."). "[A] party challenging governmental action as an unconstitutional taking bears a substantial burden." E. Enters. v. Apfel, 524 U.S. 498, 523 (1998) (plurality opinion). "[T]o succeed in establishing a [Takings Clause] violation claimants must demonstrate: (1) that they have a property interest protected by the Fifth Amendment, (2) that they were deprived of that interest by the government for public use, and (3) that they were not afforded just compensation." Ganci v. New York City Transit Auth., 420 F. Supp. 2d 190, 195 (S.D.N.Y. 2003).

Plaintiff argues that the "non-existent, delayed, or abysmally low reimbursement for medically necessary health care services that the Practice and other similarly situated out-of-network providers are experiencing [through federal IDR] constitute[s] a taking of their property." But, again, plaintiff has failed to show that they have a federally protected property interest to be compensated at cost for services provided to a private entity and paid for by a private entity. Plaintiff's argument isn't that defendants have deprived them of any entitlement to compensation embodied in a specific contract or reduced to judgment. Instead, it argues that inefficiencies in the IDR system constitute a general taking of their desired compensation. This is not enough to state a takings claim. See Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York, No. 19-cv-11285, 2021 WL 4198332, at *13 (S.D.N.Y. Sept. 14, 2021) ("A plaintiff's property interest must stem from some 'legitimate claim of entitlement' and not just an

16

'abstract need or desire' or 'unilateral expectation.'" (quoting <u>Bd. of Regents of State Colls. v.</u> <u>Roth</u>, 408 U.S. 564, 577 (1972)).

Even assuming that plaintiff has some enforceable property interest – for example, when an IDR entity has rendered a decision requiring a health care plan to provide additional reimbursement to a provider – it has failed to plausibly allege any taking of that right by the government.  My colleague Judge Donnelly addressed a substantially similar challenge to the NSA in <u>Haller v. U.S. Dep't of Health & Hum. Servs.</u>, 621 F. Supp. 3d 343 (E.D.N.Y. 2022).  I agree with her conclusion that "the [NSA] does not constitute a taking under the Fifth Amendment" because plaintiff still has an "avenue to obtain payment for their services."  <u>Id.</u> at 359.  As Judge Donnelly observed, "the [No Surprises] Act entails no physical invasion of property, nor any permanent confiscation of [the plaintiff's] assets for governmental use.  On the contrary, the [ ] Act squarely falls within the category of legislation that serves to adjust the benefits and burdens of economic life on behalf of the common good."  <u>Id.</u>  And "[w]hile the Act prohibits out-of-network providers from balance billing patients covered by the Act, it also gives providers a right to recover the value of the services provided directly from insurers and creates a process to adjudicate that right."  <u>Id.</u>  To the extent that health care plans have delayed or refused payment despite an obligation to do so, that is not a taking *by the government*.

## CONCLUSION

For the reasons above, defendants' motion to dismiss is GRANTED and plaintiff's motion for a preliminary injunction is DENIED as moot.

Plaintiff has requested, in the event defendants' motion is granted, leave to file an amended complaint to address both lack of standing and its failure to state a claim.  The Court is skeptical that either can be cured by amendment.  It does not help that plaintiff's request for

17

leave to amend gives no indication of what the amendment might be.  It has identified no facts

that might further support its standing argument or would enable it say anything about the

workings of the statute that it has not already said in order to state a claim.  In other words, this is

not a case where the allegations are too few or insufficiently detailed.  See Ashcroft v. Iqbal, 556

U.S. 662 (2009).  Rather, all the relevant facts have been placed before the Court and the failure

is in plaintiff's legal theories.

Nevertheless, if plaintiff believes it can cure the problems identified in this decision, it

may file an amended complaint within 14 days of entry of this decision on the docket.

**SO ORDERED.**

*Brian M. Cogan*

_____
U.S.D.J.

Dated: Brooklyn, New York
       July 16, 2023

18